IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

DONALD DEAN GRANT,

Petitioner,

vs.

JIM SALMONSEN, WARDEN
MONTANA STATE PRISON;
AUSTIN KNUDSEN, ATTORNEY
GENERAL STATE OF MONTANA,

Respondents.

Cause No. CV 21-134-M-DLC-KLD

ORDER AND FINDINGS AND
RECOMMENDATIONS OF UNITED
STATES MAGISTRATE JUDGE

State pro se petitioner Donald Dean Grant filed an application under 28
U.S.C. § 2254, seeking habeas corpus relief.  (Doc. 1.)  On November 22, 2021,
Mr. Grant filed an Amended Petition.  (Doc. 6.)  Mr. Grant was subsequently
ordered to show cause as to why his petition should not be dismissed as time-
barred and procedurally defaulted and was advised of the relevant legal standards.
See, (Doc. 9.)  Mr. Grant timely responded.  See, (Docs. 12 & 12-1.)  On April 5,
2022, Mr. Grant filed a supplement to his response to the show cause order, along
with additional exhibits.  (Docs. 15 & 15-1.)

In the interim, Mr. Grant also filed an interlocutory appeal with the Ninth
Circuit.  See, (Docs. 16 & 17.)  On June 17, 2022, the Circuit dismissed Mr.

1

Grant's appeal for lack of jurisdiction.  (Doc. 18.)

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  *Id.* As explained below, Mr. Grant's petition should be dismissed.

## I.      28 U.S.C. § 2254 Petition

In 2017, Mr. Grant was charged with two counts of Sexual Assault in Montana's Twentieth Judicial District, Lake County.  The underlying events occurred between 2006 and 2007.  See, Amd. Comp. (Doc. 15-1 at 2-3.)  Victim A was 7 or 8 years old at the time of the offense; Victim B was 4 years old.  See e.g., (Doc. 15-1 at 64.)  Following a jury trial, Mr. Grant was found guilty on Count I of Sexual Assault.  (Doc. 6 at 2.)  The jury was unable to reach a unanimous verdict as to the second count and the trial court declared a mistrial on Count II.  See, (Doc. 15-1 at 7, 69.)  On December 20, 2017, Mr. Grant was sentenced to 15 years at Montana State Prison.  *Id.*[1]

---

[1] As a result of the Sexual Assault conviction, Mr. Grant's parole on prior 1983 Homicide and Attempted Homicide convictions was revoked.  He indicates the Sexual Assault sentence will run consecutively to his 1983 convictions, which he apparently will not discharge until 2063. See, (Doc. 12 at 9.) See also, Montana Offender Network: https://app.mt.gov/conweb/Offender/19897/ (accessed June 21, 2022).  Mr. Grant believes it is unlikely that the Montana Board of Pardons and Parole ("BOPP") will commence his Sexual

Grant acknowledges he did not file a direct appeal, did not seek review of his sentence from the Montana Sentence Review Division, did not file a petition for postconviction relief, and did not seek state habeas corpus relief.  (Doc. 6 at 2-3.)  He indicates both his trial attorney and the Montana Innocence Project advised him that he had no valid basis for appeal or postconviction relief.  *Id.* at 3; see also, (Doc. 12-1 at 33-34.)

In his Amended Petition, Grant asserts: (1) he was convicted on hearsay, rather than physical evidence, in violation of the due process requirements of the Fifth and Fourteenth Amendments, (Doc. 6 at 3, ⁋ 15(A));  (2) the alleged victim committed perjury, *id.* at 4, ⁋ 15(B); (3) a conflict of interest existed by virtue of Grant dating the alleged victim's mother after her divorce, *id.* at 5, ⁋ 15(C); and, a parole violation occurred when his girlfriend's ex-husband acted vindictively to have Grant's parole rescinded.  *Id.* at 6, ⁋ 15(D).

Following a review of his Amended Petition, Mr. Grant was advised that his petition was filed outside the federal statue of limitations by more than two years. (Doc. 9 at 2-4.)  Additionally, he was informed that because he did not present or exhaust any of his present claims in the state court system, they now are procedurally defaulted.  *Id.* at 4-6.  Mr. Grant was instructed on the showings he

---

Assault sentence prior to expiration of the 1983 sentences, although he has attempted to have them do so.  See, (Doc. 12 at 9.)  He will appear again before the BOPP in January of 2026. (Doc. 12-1 at 36.)

would need to make to excuse both his untimeliness and default. *Id.* at 3-6.

In response, Mr. Grant does not dispute that his petition is untimely and that his claims are defaulted. Rather, he believes this matter should proceed for a variety of reasons.

Mr. Grant asserts that the charges brought against him were unjustified because the two victims claimed they were "penetrated" rather than "touched." (Doc. 12 at 1-3.) Mr. Grant notes he was charged with two counts of sexual assault against two separate victims, but that the charges pertaining to Victim B resulted in a mistrial. *Id.* at 2.[2] Mr. Grant then seems to posit that had he been charged with Sexual Intercourse without Consent, rather than Sexual Assault, he would have been acquitted because he never "penetrated" either victim. *Id.* at 3.

Mr. Grant then faults his trial attorney for not calling various witnesses that could have provided additional testimony. *Id.* at 3, 5. Similarly, he faults his trial attorney for not inquiring further into Victim A's sexual history at trial once she had testified that she had engaged in consensual sexual intercourse with her then-boyfriend. *Id.* at 4. Mr. Grant takes issue with his attorney for not inquiring whether or not Victim B, who was 13 at the time of trial, had a hymen that was intact and for failing to question why no forensic medical examination of her hymen was completed. *Id.* at 5.

---

[2] See also, (Doc. 15-1 at 7.)

Mr. Grant asserts he did not file in this Court on time because he lacks legal knowledge and training and that both his attorney and the Innocence Project advised him he lacked adequate grounds to pursue postconviction relief. *Id*. at 6.

Mr. Grant analogizes his case to *State v. Tipton*, 2021 MT 281 (Mont. Nov. 2, 2021), and argues that the 2021 updated Sexual Assault laws in Montana should be applied to him. *Id*. at 6. Based upon this rationale, Mr. Grant asserts the Sexual Assault statute that was used to prosecute him was "inactive" and that his attorney, the trial judge, and the prosecutor should have known as much. *Id*.

Based upon his reading of the Sexual Assault statute, Mr. Grant believes he should have been found guilty of a misdemeanor, if anything, and that a sexual assault via unlawful touch, can be perpetrated upon a child only by a "counselor, trainer, doctor, psychiatrist, mental health worker, or preacher." *Id*. at 7. Because he holds none of these professional credentials, Mr. Grant asserts he could not have been convicted of Sexual Assault. *Id*. Mr. Grant also states the prosecutor fabricated the crime of "touch" as it related to the charge of Sexual Assault in his case. *Id*. In an Addendum to his response, Mr. Grant argues his conviction violates the prohibition against multiple prosecutions and Double Jeopardy under state and federal law.

## II.   Analysis

As explained below, Mr. Grant has failed to demonstrate why his petition

should not be dismissed as untimely and procedurally defaulted.  Accordingly, his petition should be dismissed.

### i.    Statute of Limitations

To the extent that Mr. Grant believes this Court should equitably toll the statute of limitations, see e.g., *Holland*, 560 U.S. at 649, due to his lack of legal training and knowledge, such an argument is unavailing.  The Ninth Circuit instructs that "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F. 3d 1150, 1154 (9th Cir. 2006); see also, *Ford v. Pliler*, 590 F. 3d 782, 789 (9th Cir. 2009)(equitable tolling "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone"); *Waldron-Ramsey v. Pacholke*, 556 F. 3d 1008, 1013 n. 4 (9th Cir. 2009)("[A] pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling.").  Thus, Mr. Grant has failed to provide a basis which would entitle him to equitable tolling; his claims remain untimely.

### ii.    Procedural Default

As previously explained, a procedural default may be excused for a fundamental miscarriage of justice.  See, *Cook v. Schriro,* 538 F. 3d 1000, 1028 (9th Cir. 2008).  Such a showing is made when a petitioner can show that a constitutional violation probably caused the conviction of one innocent of the

6

crime. *Smith v. Baldwin*, 510 F. 3d 1127, 1139 (9th Cir. 2007)(en banc). "Actual innocence" means factual innocence, not a mere legal insufficiency. See, *Bousley v. United States*, 523 U.S. 614, 623-24 (1998)(citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992); see also, *Jaramillo v. Stewart*, 340 F. 3d 877, 882 (9th Cir. 2003).

Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n. 32. The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id*. at 321. To be credible, however, "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence- that was not presented at trial." *Schriro*, 538 F. 3d at 1028 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In the present case, Mr. Grant has presented no newly discovered evidence that would demonstrate he is actually innocent of Sexual Assault. Instead he points to trial testimony, interviews, and his own conjecture about testimony that might have been presented at his trial. All of this information was known to Mr. Grant following his trial and is not "newly discovered." Moreover, this purported evidence does not meet the high evidentiary showing demanded by *Schlup*.

Accordingly, Mr. Grant has failed to show that adhering to the present procedural default of his petition would constitute a fundamental miscarriage of justice.

Additionally, relying upon *Tipton*, Mr. Grant asserts the state statue under which he was charged for Sexual Assault was inactive during the time of his charging and sentencing. Because Mr. Grant believes this statute was inactive during the underlying criminal proceedings, he asserts he is entitled to the same relief afforded to Mr. Tipton. This argument is unavailing and has previously been rejected by this Court.[3]

In *Tipton*, the Court found trial counsel provided ineffective assistance by failing to challenge the statutory basis for one count of Indecent Exposure to a Minor because the statute upon which the charge was based did not go into effect until after one of the underlying incidents had occurred. *See Tipton*, 2021 MT 281, ¶¶ 17-21. Additionally, the Court determined Tipton's two convictions for Sexual Abuse of Children warranted reversal because an October 2017 amendment of the law was improperly applied to Tipton's pre-October 2017 conduct. *Id*. at ¶¶ 23-25. Tipton's convictions were reversed and the matter was remanded for further proceedings. *Id*. at ¶ 26.

---

[3] See e.g., *Friedt v. Salmonsen et al*., Cause No. CV-21-48-BLG, Or. (D. Mont. Feb. 16, 2022)(rejecting Friedt's *Tipton* argument relative to procedural default); *Henderson v. Salmonsen*, Cause No. CV-21-62-BU-BMM, Or. at 4-5 (D. Mont. Dec. 2, 2021)(rejecting Henderson's Rule 60(b) motion based, in part, on *Tipton*); see also, *Hollemon v. Salmonsen*, Cause No. CV-21-90-BU-BMM, Or. at 5-8 (D. Mont. Feb. 9, 2022)(rejecting Hollemon's argument that *Tipton* provides cause to excuse his procedural default).

As a preliminary matter, it does not appear that Mr. Grant's case is analogous to *Tipton*.  Moreover, the interpretation and application of state law, lies exclusively within the province of the state court.  The Montana Supreme Court is the highest authority in the land—superior even to the United States Supreme Court—on the content and meaning of Montana law.  See, e.g., *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute.").  The interpretation of state law and statutes, including the potential application of *Tipton*, presents an issue of purely state law.  Or, put another way, there exists no issue of federal law which would allow this Court's intervention.

Additionally, Mr. Grant's reference to an equal protection violation does not assist his procedural default argument.  "The Equal Protection Clause requires the State to treat all similarly situated people equally."  *Shakur v. Schiro*, 514 F. 3d 878, 891 (9th Cir. 2008)(citation omitted).  Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  See, *San Antonio School District v. Rodriguez*, 411 U.S. a (1972).  But Mr. Grant does not allege he is a member of a protected class, nor does he allege acts which constituted an intentional discrimination against him.  Rather he simply advances his own interpretation of a state law case.  Moreover, this state law issue cannot be converted into one of

federal constitutional import simply by invoking a federal constitutional provision, such as due process or equal protection. See e.g., *Langford v. Day*, 110 F. 3d 1380, 1389 99th Cir. 1996), *cert. denied*, 522 U.S. 881 (1997). Thus, Mr. Grant's reference to and reliance upon *Tipton* does not serve to set aside any procedural bars before this Court. His claims remain procedurally defaulted.

Similarly, the arguments Mr. Grant advances relative to his interpretation of state law are unpersuasive. As explained below, he fails to make a colorable showing of legal insufficiency, must less factual innocence, as required by *Schlup*. See, *Bousley,* 523 U.S. at 623-24.

Mr. Grant's reference to sentences that may be imposed in situations involving *nolo contendere* or *Alford* pleas has no bearing on his case as he went to trial. Similarly, his belief that he could not be convicted of Sexual Assault based upon "touch" rather than "sexual contact" is meritless. The term "Sexual contact" is defined by the Montana Code as "**touching** of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely: (a) cause bodily injury to humiliate, harass, or degrade another; or (b) arouse or gratify the sexual response or desire of either party." See, Mont. Code Ann. § 45-2-101(67)(a)-(b)(emphasis added). Accordingly, Mr. Grant's argument that the prosecutor perjured himself and/or unlawfully introduced the term "touch" into the sexual assault trial is unavailing. Moreover the jury was instructed on the

10

statutory definition of sexual contact.  See e.g., (Doc. 15-1 at 64.)  The claim finds no basis or support in the record before the Court.

The Court does not follow Mr. Grant's claim that in order to sexually assault a child one must be a counselor, trainer, doctor, psychiatrist, mental health worker or preacher.  Perhaps, Mr. Grant is referring to the definitions of consent relative to sexual assault offenses and the situations in which a victim is incapable of consent. See e.g., MCA § 45-5-501.  Regardless, these provisions have no applicability to the facts of Mr. Grant's case nor do they serve to excuse the procedural default of his claims.

Finally, Mr. Grant's claim that he is innocent based upon Montana's statutory provision barring prosecutions based upon the same transaction as a former prosecution has no merit.  Mr. Grant seems to argue that once the jury advised the trial court they were hung on Count II, the court was mandated to acquit on Count I because it had lost jurisdiction.  See, (Doc. 15 at 3-4.)  Mr. Grant's reliance upon state law is fundamentally flawed because the two counts, involving separate victims and occurring at separate times, although within the same general time period, did not arise out of the "same transaction."  *State v. Fox*, 2012 MT 172, ¶26, 366 Mont. 10, 285 P. 3d 454 (holding because two separate victims were victimized at different times, it was not the same transaction).  But, as

set forth above, the application and interpretation of state law is not within the province of this Court.

Mr. Grant also cites to the Fifth Amendment's prohibition against double jeopardy. (Doc. 15 at 4.)  The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be twice put in jeopardy of life or limb" for the same offense.  But, the jury's failure to reach a unanimous verdict on Count II did not acquit Mr. Grant of that charge.  Moreover, jeopardy does not terminate, but rather continues, following a mistrial justified by a hung jury.  See, *United States v. Bates*, 917 F. 2d 388, 392-93 (9th Cir. 1990).  As set forth above, it appears Mr. Grant was never retried on Count II.  But even if he had been retried, such a trial would not involve "relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial."  See, *Yeager v. United States*, 557 U.S. 110, 119 (2009).  Thus, there is no federal Double Jeopardy issue.

Tenable actual-innocence gateway pleas are rare.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id*. (citing *Schlup*, 513 U.S. at 329).  This standard permits review only in the "extraordinary" case.  *Schlup*, 513 U.S. at 324-27.  Mr. Grant's case is not the

12

extraordinary one and he has failed to make the showing demanded by *Schlup*. The claims remain procedurally defaulted.

### iii.    Conclusion

The claims contained in Mr. Grant's petition are untimely and procedurally defaulted without excuse.  Mr. Grant has not demonstrated a valid basis to excuse his late filing or to set aside the procedural default.  Accordingly, this matter should be dismissed with prejudice.

## III.    Outstanding Motions

While the proceedings surrounding the statute of limitations and procedural default were occurring, Mr. Grant filed a filed a Motion for Recusal, (Doc. 13), and a Motion to Change Venue.  (Doc. 14.)  It appears that Mr. Grant has had the assistance of Lionel Ellison in drafting both of these motions.  Attached to Mr. Grant's Motion for Recusal are documents from Ellison's cases in both this District and the Ninth Circuit.  See, (Doc. 15-2.)  Likewise, Mr. Grant's entire basis of his request to change venue stems from Ellison's ongoing cases and Ellison's belief that Magistrate Judge Cavan and District Judge Christensen are biased against him, have committed "fraud" upon the Court, and together both judges are the subject of Judicial Misconduct proceedings before the Circuit.  See, (Doc. 14.)

13

As a preliminary matter, these claims have been addressed in detail in an order issued in Ellison's habeas case and will not be addressed herein.  See, *Ellison v. Salmonsen et al.*, Cause No. CV-21-26-BLG-DLC-TJC, Or. and Find. & Rec., at 86-95 (filed March 2, 2022).  The allegations are lacking in merit and have no relation to Mr. Grant's present case.  Moreover, the Court would note that on November 26, 2021, Chief Judge Thomas dismissed Ellison's complaints of judicial misconduct against Judges Christensen and Cavan.  See, *In re: Complaint of Judicial Misconduct*, Cause Nos. 21-90024 and 21-90025, Or. (9th Cir. Nov, 26, 2021).  Subsequently, a panel reviewed the Chief Judge's order and affirmed the dismissal of Ellison's judicial misconduct complaints.  See, *In re: Complaint of Judicial Misconduct*, Cause Nos. 21-90024 and 21-90025, Or. (9th Cir. April, 20, 2022).

### i.      Change of Venue

Venue for a petition for writ of habeas corpus under § 2254 will lie in the district court for the district in which the petitioner is in custody, or it may be filed in the district court of the district in which the challenged state court proceedings took place, and each of these courts shall have concurrent jurisdiction to entertain the application.  28 U.S.C. § 2241(d).  Pursuant to Local Rule 3.2(b)(2)(A), venue in a habeas case is proper in this district in the division containing the county where judgment was entered if the judgment is challenged.

14

Mr. Grant is in custody in Montana, and the challenged court proceedings also took place in Montana.  Venue is, therefore, appropriate in the District of Montana under § 2241(d).  Also, the judgment being challenged in this action was entered in Lake County, Montana.  Accordingly, venue is proper under the Local Rules in the Missoula Division of this Court.

A district court may transfer any civil action to any other district or division where it might have been brought for "the convenience of parties and witness, in the interest of justice."  28 U.S.C.A. § 1404(a).  In this case, however, Mr. Grant does not request transfer to another district where the action might have been brought and has failed to state how the convenience of the parties and witnesses, or the interests of justice, would be served by transfer of this case to another district.  Mr. Grant simply recites Mr. Ellison's previously claimed beliefs of judicial bias in this district.  Such argument is insufficient to support a transfer.  The Motion to Change Venue will be denied.

### ii.    Recusal

In support of his motion for recusal, Mr. Grant cites to 28 U.S.C. § 455 and 28 U.S.C. § 144.  See, (Doc. 13 at 1.)  Mr. Grant seems to argue that under § 144, recusal is warranted because Judge Christensen has not granted Ellison habeas corpus relief.  *Id*.  Similarly, Mr. Grant asserts recusal is appropriate under § 455, because Judge Christensen has demonstrated his partiality against Ellison.  Mr.

Grant provides documents from Ellison's cases in support of his motion.  See, (Doc. 13-2.)

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  "The test for disqualification under section 455(a) is an objective one: whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983).  The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather a "well-informed, thoughtful observer" who "understand[s] all the relevant facts" and "has examined the record and law." *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008).  This standard does not mandate recusal upon the mere "unsubstantiated suspicion of personal bias or prejudice." *Id.* (citations omitted).   Mr. Grant's reliance upon Ellison's unsubstantiated belief and suspicion of Judge Christensen's bias is insufficient to support his request for recusal under § 455.  He has demonstrated no basis in the instant case upon which to reasonably question Judge Christensen's impartiality. To date, Judge Christensen has had nothing to do with the instant matter. Therefore, recusal is not required under § 455.

Section 144 requires a party to file a "timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either

16

against him or in favor of any adverse party . . . ."  To be legally sufficient, the affidavit "must state facts which if true fairly support the allegation that bias or prejudice stemming from (1) an extrajudicial source (2) may prevent a fair decision on the merits." *United States v. Azhocar*, 581 F.2d 735, 739 (9ᵗʰ Cir. 1978).  The judge must look at "the substantiality of the support given by these facts to the allegation of bias." *Id*. at 739-40.  Conclusory statements alleging personal bias or prejudice are not statements of fact, and do not provide a basis for disqualification. *Wilenbring v. United States*, 306 F.2d 944, 946 (9th Cir. 1962).

When a court considers a motion under § 144, it should: (1) first evaluate whether to "grant recusal pursuant to [§ 455]"; and (2) if it determines that recusal is inappropriate under § 455, proceed to "determine the legal sufficiency of the affidavit filed pursuant to [§ 144]." *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980).  Under § 144, recusal is not automatic.  "An affidavit filed pursuant to [§144] is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice toward a party that stems from an extrajudicial source." *Id*.

While recusal is inappropriate under § 455, Mr. Grant also fails to make the requisite showing of legal sufficiency of the affidavit under the second prong of §144.  The extrajudicial sources supporting Mr. Grant's affidavit are documents from Ellison's case which Mr. Grant "solemnly swears" he believes to be true and

17

accurate.  See, (Doc. 13-1.)   As explained in Ellison's habeas case and as the

Circuit has now ruled, there has been no judicial misconduct in Ellison's cases.

The fact that Ellison has received adverse rulings with which he disagrees is an

insufficient basis to support recusal in Ellison's case, *see O'Connor v. U.S.*, 935

F.2d 275 (9th Cir. 1991), much less to support the same argument in Mr. Grant's

case.  Moreover, Mr. Grant has not specifically alleged any independent facts to

fairly support his contention of bias.  See, *Sibla*, 624 F.2d at 868.

In short, Mr. Grant has provided no basis to support or justify his request for

recusal under either §144 or § 455.  Further, he has failed to demonstrate any

reasonable basis on which to question this Court's impartiality.  Recusal is

unwarranted; the motion will be denied.

## IV.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254

Proceedings.  A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further."  *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Where a claim

is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Mr. Grant has not made a substantial showing that he was deprived of a constitutional right. He has failed to make a colorable claim of equitable tolling or demonstrate the existence of a fundamental miscarriage of justice necessary to set aside the procedural default. Accordingly, his is petition is both procedurally defaulted and time barred. Reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability should be denied.

Based upon the foregoing, the Court issues the following:

## ORDER

Mr. Grant's Motion for Recusal (Doc. 13) and Motion to Change Venue (Doc. 14) are DENIED.

## RECOMMENDATIONS

1. Mr. Grant's Amended Petition (Doc. 6) should be DISMISSED with prejudice as time-barred and procedurally defaulted.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

19

**NOTICE OF RIGHT TO OBJECT TO OBJECT
TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES
OF FAILURE TO OBJECT**

Mr. Grant may file objections to these Findings and Recommendations

within fourteen (14) days after service.  28 U.S.C. § 636.  Failure to timely file

written objections may bar a de novo determination by the district judge and/or

waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

DATED this 27th day of June, 2022.


*/s/ Kathleen L. DeSoto*
Kathleen L. DeSoto
United States Magistrate Judge